Caruthers, J.,
delivered the opinion of the Court.
This case is now before us the second time. It is a suit for the probate of the will of G. W. S. Marr, deceased, upon an issue of devisavit vel non in the Circuit Court of Obion. This appeal in error is to reverse a judgment against the validity of the will, upon the new trial granted to the plaintiffs at our last term. We then reversed upon errors of law in the- charge of the Court, in relation to the effect to be given to a label *305 on the bundle of papers in which it was found, as may be seen by the report of the case in 5th Sneed. And now the error assigned, is supposed to be found in this clause of the charge: “ But if you find that he kept it in a manner that satisfies you that it was a paper not cared for, but repudiated by him, or you are otherwise satisfied, than from the manner of keeping, that it was a repudiated paper, and not intended by him to operate or have effect as his will, then you will find for the defendant.”
Again, in reply to a request by the plaintiff’s counsel, to charge, [that “ if Gr. W. L. Marr, the deceased, prepared the paper, in dispute, and placed it among his valuable papers before his death, that the law presumes it is his will, unless he revoked it.” The Court said, “ if the said paper was written.by Marr, and placed among his valuable papers in his lifetime, it would be the will of said Marr, unless he afterwards revoked it, or repudiated it, and did not keep it with intent and purpose, that it should operate as his will, as before charged.”
The Court rejected an application by the counsel, to instruct the jury that Gr. 'W. L. Marr could not have revoked the paper writing here as his will, if he prepared it and placed it among his valuable papers or effects, unless he did so by a paper writing of the same dignity of the one propounded.”
Much difficulty has been experienced by the Courts of this State and those of North Carolina, in the construction of the act of October, 1784, ch. 10, sec. '5, providing for holographic wills, and prescribing the requisites for their validity. Before that, no will for land, *306 was good unless it were signed and acknowledged before two subscribing witnesses. This act made an exception in favor of wills of this description. The first requirement is, that “ where any will shall be found amongst the valuable papers or effects of any deceased person, or shall have been lodged in the hands of any person for safe keeping,” &c.
What is meant by valuable papers ? No better definition, perhaps, can be given, than that they consist of such as are regarded by the testator as worthy of preservation, and, therefore, in his estimation, of some value. It is not confined to deeds for land or slaves, obligations for money, or certificates of stock. Any others which are kept and considered worthy of being taken care of by the particular person, must be regarded as embraced in that description. This requirement is only intended as an indication on the part of the writer, that it is his intention to preserve and perpetuate the paper in question as a disposition of his property; that he regards it as valuable. This is the only point in the requirements of the statute, about which there was any controversy in this case, all the others having been fully made out.
But the Courts have, however, properly held, that even if these requirements all concur, yet, the paper may not be' valid as a testament. It is to be a “will” thus found; and not every payer so deposited, is, necessarily to be established, though it may be in proper form, in the hand writing, signed, &c. It is still open to attack on various grounds; such as, that the testator was of unsound mind, operated upon by undue influence, fraud, or duress, or that it was never legally assented to by the deceased *307 as a complete and finished act to any extent. To be “ found among bis valuable papers,” implies that it must have been placed there by the writer, or with his knowledge and assent, not surreptitiously by some other person, and so deposited with intent and purpose at the time that it should be his will. But when all that is done in conformity 'to the statute, it is equivalent to a publication; it requires something more than verbal declarations to revoke or defeat it. There must be some act done indicative of a change of purpose, such as the cancellation, destruction, or removal from the place of deposit, or reclamation from the hands of the person with whom it may have been lodged.
Chief Justice Best, in 15 Con. Law Rep., 491, in reference to a witnessed will, said: “It has been insisted that declarations of the testator were admissible in evidence, to show that the will he had executed was not valid; but no case had been cited to support such a position, and we shall not, for the first time, establish a doctrine which would render useless the precautions of making a will; for if such evidence were admissible, some witness would constantly be brought forward to set aside the most solemn instruments. Such a doctrine would be not only in the highest degree inconvenient, but contrary to the first principles of ' evidence, according to which the will itself is the best evidence which the nature of the case supplies.” The writing and signing by himself, and the continued deposit among his valuable papers or effects, must have been intended by the Legislature to have the same effect as -a signing, and acknowledgment before witnesses. Both amount to a publication in the legal sense, and the latter mode is certainly as solemn *308 and deliberate. In both cases it is under his power till his death, and can only speak from that time. If he can alter, destroy, or change it in the one case, it can be as easily done in the other. It is more easy in the latter case to give effect to a change of mind, for by a simple removal from the place of deposit to a place where there are no papers or effects, or none of any value, it would be invalidated, if so “ found ” at his death. But in case of a witnessed will, it must be can-celled, destroyed or revoked, expressly or impliedly, by a writing of equal solemnity. A holographic will is of the same dignity when the things prescribed by the statute are done. Yet, on account of the requirement in relation to the place of deposit, the easy additional mode of rendering it invalid, exists, as it must not only be placed by him, but “found,” after his death, among papers or things deemed valuable. This change of itself is a sufficient indication, under the statute, of a mind to revoke, or rather it displaces an essential ingredient in the solemnities required.
It is certainly not conclusive in favor of the paper that it is in the form of a testament, perfect in all its parts, written, signed, and found as prescribed. It may, after all that, not be his will, as before stated. It may be shown that he never intended it to be his will. But how is that to be shown ? what kind of proof is admissible on that point ? Upon the charge in relation to that question alone, extracted as a matter, of law, our decision must turn in this case.
True, it is competent for the jury, in coming to a conclusion upon this question of fact, for the intent is an important fact in such a case, to look to all the cir *309 cumstances, both “ intrinsic and extrinsicbut what kind of circumstances ? Such as the general rules of law prescribe in such cases, as indicative of the intention that the paper shall be his will, and no others. Rights de-pendant upon the validity of wills should be as carefully guarded as those derived "under deeds, or the statutes "of descent and distribution, but not more so. In both cases they are questions of title to property, and are entitled to equal favor.
If it appear in the body of the instrument that it is incomplete, unfinished, not signed, with an attesting clause, but no witnesses, without testamentary form, these are intrinsic circumstances, against the intent that the paper should be a final disposition of his property, and tend to raise a presumption that it is not his will. But these circumstances may be rebutted.
But what is the character of extrinsic circumstances to which reference may be had in determining the question of intent, in cases falling under this statute, and where its requirements have been fully complied with? Some of them have been before stated as grounds of attack.
The declarations of the party with reference to the particular paper, would be proper to be considered, but entitled to very little, if any, weight, without some act showing an intention to change what he had deliberately done in full compliance with the statute. Having thus shown a settled purpose that such would be his will, there must be something more than simple declarations, if the paper, in his own hand writing, and under his own control, be still permitted to remain in the proper deposit, undisturbed by him, until his death. This law prescribes *310 the requisites for a valid will, and when these are all performed in strict conformity thereto, can it be allowed, upon any proper principle, to countervail and defeat them by mere words and declarations, unaccompanied by any act?
It is not easy to ascertain by what motives a man may be influenced to make such declarations, or even to make overtures for the -writing of another will, which was not carried out. All such facts must rest 'in the memory of witnesses, and are liable to be misunderstood ; or, if not, they may have been done or said under some momentary impulse, or crude and unsettled purpose. But the deliberate acts of writing the paper himself in testamentary form, and depositing it with other things of value, with the act of assembly before him, prescribing the effect in law, of what he was doing, afford a safe ground for ascertaining his wishes in relation to his property after his death. If these solemn and deliberate acts can be frustrated by evidence of loose or casual declarations, that he had no will, or that he wanted some one to write a will, or that he had changed his purpose and intention, without any act done to carry out such purpose, wThich was so easy of accomplishment, if seriously entertained, there would be no certainty in this mode of disposing of a man’s property.
The statute framed with so much care and precaution, if this were so, would have signally failed to answer the purpose for which it was designed.
We will not say that verbal declarations are not admissible as evidence in these cases for some purposes. In a case like this, they may be looked to as circumstances to aid in the determination of the question so much controverted; whether the paper was deposited and *311 found among bis valuable papers or effects, but not of themselves, to work a revocation. They may tend to illustrate the original intent, but not to show a change of that purpose which is established by the fact of a legal and continuing deposit of the paper. In the case of Crutcher v. Crutcher, they were proper, because the doubtful question there, was, whether the papers then found were even intended • to be testamentary, as they were imperfect, unfinished, and not in the form of testaments, though written by himself.
When the jury were told by his Honor in this case, that “ if they were otherwise satisfied than from the manner of keeping it, that it was a repudiated paper, and not intended to operate or have effect as his will,” they should find for the defendants; that is, that it was not his will, what else could they have understood, but that they were at liberty to rely upon his subsequent declarations, that he had no will as sufficient to defeat it, although it remained till his death, properly deposited and unrevoked by any act of his ? The tendency of the whole charge, is to authorize the jury to recognize a mere parol revocation by a simple change of intent, without any act done to evince that such was his settled purpose. ■
The word repudiated, in the connection in which it was used, was not very appropriate to convey the legal idea to the jury, and was well calculated to give them a wrong conception of their duty upon the issue submitted to them. Wills, which should be the most solemn act of a man’s life connected with his property, are not to be thus lightly regarded when made in conformity to the law.
*312 It may be that this will is in conflict with public sentiment, and against onr ideas of equality and justice among his children, or that it was made under a state of feelings towards them, which was afterwards changed; but still the case must be governed by general rules in Its investigation and determination. ' The danger is, that- a wrong principle established to accomplish what seems - to be right in one ease, may defeat right and justice in many others. All cases, therefore, must be governed by the same general rules and principles.
We feel constrained by these considerations, to again reverse the judgment in this case, and grant a second new trial.